UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

MATTHEW MYERS,

Petitioner,

v.

JOHN HENLEY, *et al.*,

Respondents.

Case No. 3:23-cv-00293-ART-CLB

ORDER

This counseled habeas matter comes before the Court on Respondents' motion to dismiss Petitioner Matthew Myers's First-Amended Petition for a Writ of Habeas Corpus. (ECF No. 42.) Myers opposed the motion, and Respondents filed a reply in support of the motion. (ECF Nos. 48; 56.) For the reasons stated below, the Court denies the motion to dismiss the First-Amended Petition.

## I.    BACKGROUND

A jury in Clark County, Nevada, convicted Myers of 33 counts of theft under NRS §§ 205.0832 and 205.0835 and 33 counts of exploitation of an older/vulnerable person under NRS §§ 200.5092 and 200.5099. (ECF No. 37-34 at 2–5.) Myers was sentenced to an aggregate of 10 to 30 years in prison. (ECF No. 37-14.) At Myers's trial, the State presented the following evidence, as summarized by the Nevada Court of Appeals:

> Friederike Willard and her husband, James Willard, owned several Las Vegas area properties, including an apartment complex in Henderson known as the Oceanside Apartments ("Oceanside"). James had a physical therapist named Doug Lancaster. Doug introduced the Willards to his wife, Rita Lancaster, a CPA. In 2003, Rita began handling the Willards' tax preparation.
>
> Myers lived at Oceanside and formed a relationship with the Willards. In 2005, the Willards hired Myers to help manage Oceanside. In exchange, the Willards allowed Myers to live at Oceanside rent-free, and they occasionally paid for his groceries and medical expenses. James died in 2009. Friederike was 83 years old at the time. Sometime after James died, Doug became a caretaker

1

for Friederike. In March 2014, Friederike added Doug, and Doug and Rita's children, as beneficiaries in her will. Friederike did not, however, include Rita as a beneficiary. [Footnote: James and Friederike did not have any children.]

Beginning in 2011, Myers began assisting Friederike by managing the bills and collecting the rents for Oceanside. Myers also helped Friederike manage her personal expenses. Friederike authorized a credit card connected to the Oceanside accounts for Myers to use for Oceanside expenses. Myers and Friederike were the only people with access to these accounts. From 2011 to 2013, Myers provided Rita with the information necessary to complete Friederike's taxes. In March 2014, Friederike executed a power of attorney to Myers and added him as a beneficiary in her will.

In October 2014, Rita prepared Friederike's 2013 tax return. For 2013, Friederike had a tax liability of approximately $130,000 because she sold properties, including Oceanside. When Rita contacted Friederike's financial advisor to settle the tax liability, Rita expected Friederike to have over $1,000,000 in her account from the property sales. However, Rita learned that Friederike's account balance was only around $350,000.

Rita, with Friederike's authorization, froze all of Friederike's accounts and obtained statements dating back to 2011. Rita then analyzed all the transactions between 2011 and 2014 and reconciled every bank and credit card statement. During this process, Rita discovered several suspicious transactions. Rita spoke to Friederike to determine whether she authorized the transactions. Friederike told Rita that many of the transactions were not authorized. In total, Rita calculated that between 2011 and 2014, approximately $813,000 of Friederike's money had been used in unauthorized transfers or transactions. Rita believed that Myers stole the funds.

When Rita alerted Friederike of this, Friederike removed Myers from her will and revoked his power of attorney. Rita submitted Friederike's financial records and her analysis to the Las Vegas Metropolitan Police Department (LVMPD). A forensic legal auditor reviewed and confirmed Rita's calculations and compared them to bank statements for Myers and his daughter. The auditor confirmed that various bank transfers were made from Friederike's account to Myers and his daughter. The auditor agreed that approximately $813,000 of Friederike's funds had been used in numerous unauthorized transfers and transactions.

As a result, the State charged Myers with 36 counts of theft and 36 counts of exploitation of an older/vulnerable person. During discovery, Myers learned that Doug inherited property from a different elderly physical therapy client. The State thereafter discovered that Myers intended to cross-examine Rita about this inheritance to show bias. Specifically, Myers wished to show that because Doug was also a beneficiary under Friederike's will, his wife, Rita, was biased because she would indirectly benefit from the probable inheritance. The State moved to preclude this line of cross-examination, arguing that Doug's inheritance from the third party involved facts extrinsic and collateral to the proceedings, and

therefore, would be an improper method to impeach Rita because it would confuse the jurors about whose guilt was at issue. Myers opposed, arguing that the issue went to Rita's credibility and was therefore relevant. The district court found that questions about Doug's inheritance from the third party were not relevant to the issue of Myers's guilt and had the potential to mislead the jury and confuse the issues. The district court did not say, at the hearing or in its order, that it found the proposed cross-examination questions would be collateral and extrinsic.

On the first day of the jury trial, before jury selection, Myers argued that he should be allowed to ask Doug about the inheritance from the third party because it showed Doug's bias and motive. The district court disagreed, again concluding that the evidence was not relevant. As a result, during trial, Myers did not ask Rita or Doug about Doug's other inheritance, but did question them as to Doug's status as a beneficiary in Friederike's will. After a five-day trial, the jury convicted Myers of 33 counts of theft under NRS 205.0832 and NRS 205.0835 and 33 counts of exploitation of an older/vulnerable person under NRS 200.5092 and NRS 200.5099.

(ECF No. 37-34 at 2–5 (footnotes omitted, except as indicated).) Myers's appeal was unsuccessful as was his state postconviction petition. (ECF Nos. 37-34; 38-27.) Myers commenced this action by filing a *pro se* Petition for a Writ of Habeas Corpus. (ECF No. 1.) Following the appointment of counsel, Myers filed a First-Amended Petition. (ECF Nos. 4, 29.)

## II.    DISCUSSION

### A.    Timeliness of the Petition

Respondents contend Myers's original petition and, therefore, his First-Amended Petition, are untimely. (ECF No. 42 at 4–5.) Myers alleges he is entitled to equitable tolling. (ECF No. 48 at 2–10.) For the reasons explained below, the Court concludes Myers is entitled to equitable tolling and denies the motion to dismiss the First-Amended Petition as untimely.

### 1.    Statutory Tolling Analysis

The Antiterrorism and Effective Death Penalty Act (AEDPA) establishes a 1-year period of limitations for state prisoners to file a federal habeas petition under 28 U.S.C. § 2254. The 1-year limitation period, *i.e.,* 365 days, begins to run from the latest of four possible triggering dates, with the most common being the date on which the petitioner's judgment of conviction became final by either

the conclusion of direct appellate review or the expiration of the time for seeking such review. 28 U.S.C. § 2244(d)(1)(A).

For a Nevada prisoner pursuing a direct appeal, a conviction becomes final when the 90-day period for filing a petition for certiorari in the Supreme Court of the United States expires after a Nevada appellate court has entered judgment or the Supreme Court of Nevada has denied discretionary review. *See Harris v. Carter*, 515 F.3d 1051, 1053 n.1 (9th Cir. 2008); *Shannon v. Newland*, 410 F.3d 1083, 1086 (9th Cir. 2005); Sup. Ct. R. 13(3) ("[t]he time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate (or its equivalent under local practice)."). On March 19, 2020, however, the Supreme Court of the United States issued an order extending the time to file a certiorari petition from 90 to 150 days. *See* 334 FRD 801. That rule took effect on March 19, 2020. *Id.* The March 19, 2020, rule stayed in effect until July 19, 2021, when the Supreme Court issued a Miscellaneous Order Rescinding COVID-19 Related Orders. *See* 338 FRD 801.

The Nevada Court of Appeals decided Myers's direct appeal on November 25, 2020. (ECF No. 37-34.) Myers's certiorari petition was therefore due 150 days later, on April 24, 2021. He did not file a petition for a writ of certiorari. Thus, his conviction was final and  his 365-day AEDPA clock started on April 25, 2021.

No statutory tolling of the AEDPA-limitation period is allowed for the period between finality of a direct appeal and the filing of a petition for post-conviction relief in state court because no state court proceeding is pending during that time. *See Rasberry v. Garcia*, 448 F.3d 1150, 1153 n.1 (9th Cir. 2006); *Nino v. Galaza*, 183 F.3d 1003, 1006–07 (9th Cir. 1999). The federal limitations period is, however, tolled while "a properly filed application for State post-conviction or

other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

Because the filing of Myers's state postconviction petition on December 22, 2021, tolled the federal limitation period under 28 U.S.C. § 2244(d)(2), his AEDPA clock ran from April 25, 2021, until the day before he filed his state postconviction petition, for a total of 240 days. (ECF No. 38-7.) Accordingly, at the time Myers filed his state postconviction petition, he had 125 days remaining of his limitation period to file a federal petition. Once Myers filed his state postconviction petition, the AEDPA-limitation period remained statutorily tolled until December 5, 2022, when the remittitur issued after the Nevada Court of Appeals affirmed the denial of Myers's state petition. (ECF No. 38-28.) The AEDPA limitation period began to run again the next day, December 6, 2022, and expired 125 days later, on April 10, 2023. Myers, however, handed his federal habeas petition to a correctional officer for transmission to this Court, commencing this action, on June 20, 2023, which was 70 days after the limitations period expired. (ECF 1-1 at 1.) Myers's petition is untimely unless he can establish entitlement to equitable tolling.

### 2. Equitable Tolling Analysis

Myers contends he is entitled to equitable tolling based on the following circumstances: (1) he is wheelchair bound and relies on it to move within the prison and access legal resources; (2) he suffers from serious medical conditions, including Parkinson's Disease, glaucoma, asthma, high blood pressure, cardiovascular disease and vision loss; (3) he has received inadequate medical care in prison; (4) he experiences pain, tremors, and fatigue, that substantially impaired his ability to concentrate, write, and perform sustained cognitive tasks; (5) his appellate counsel abandoned him by failing to notify him that his state habeas appeal had been denied or provide him a copy of the remittitur; (6) Myers did not learn of the Nevada Court of Appeals' November 2020 ruling until the

court mailed him the order and remittitur in January 2021; (7) through no fault of his own, it took from February until July or August 2021, for Myers to receive part of his case files; (8) due to COVID-19 protocols and greater than usual prison lockdowns and staffing shortages, he could not access the prison law library to research his claims or make copies of his records; and (9) after he mailed his state habeas petition to the state district court, it took 32 days for the court to file it. (ECF No. 48 at 3–10.)

The Supreme Court has held that the AEDPA statute of limitations "is subject to equitable tolling in appropriate cases." *Holland v. Fla.*, 560 U.S. 631, 645 (2010). Equitable tolling is appropriate when (1) a petitioner has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. *Id.* at 649 (citing *Pace v. Diguglielmo*, 544 U.S. 408, 418 (2005)). To satisfy the first element, a petitioner "must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing." *Smith v. Davis*, 953 F.3d 582, 598–99 (9th Cir. 2020) (en banc); *See also Pace*, 544 U.S. at 419 (holding petitioner failed to act diligently because, without any valid justification, he waited for several years to file his state petition and then sat on them for five months after his state proceedings became final before seeking relief in federal court).

The level of diligence required for equitable tolling is "reasonable diligence"; not "maximum feasible diligence." *See Holland*, 560 U.S. at 653 (quotation marks and citations omitted). "The purpose of requiring a habeas petitioner to show diligence is to verify that it was the extraordinary circumstance, as opposed to some act of the petitioner's own doing, which caused the failure to timely file." *Doe v. Busby*, 661 F.3d 1001, 1012–13 (9th Cir. 2011). To satisfy the second element, a petitioner must demonstrate that the "extraordinary circumstances"

6

were the cause of his untimeliness. *See Grant v. Swarthout*, 862 F.3d 914, 926 (9th Cir. 2017).

"In evaluating whether an 'extraordinary circumstance stood in [a petitioner's] way and prevented timely filing,' a court is not bound by 'mechanical rules' and must decide the issue based on all the circumstances of the case before it." *Smith*, 953 F.3d at 600 (citing *Holland*, 560 U.S. at 649–50) (emphasis added) (internal quotation marks omitted). *See also Socha v. Boughton*, 763 F.3d 674, 686 (7th Cir. 2014) (explaining that an equitable tolling inquiry is not a "search for a single trump card," but "an evaluation of the entire hand that the petitioner was dealt."); *See, e.g., Perez v. Reubart*, 150 F.4th 1164, 1168 (9th Cir. 2025) (concluding equitable tolling appropriate where despite diligence, petitioner was prevented from timely filing habeas petition by abandonment by postconviction counsel, lack of access to her case file, and inability to obtain a financial certificate from the prison).

To consider Myers's equitable tolling request, it is important to understand there were unforeseen restrictions placed on courts, government offices, prisons, and individuals (incarcerated or not), due to the ongoing extraordinary circumstance created by the response to the COVID-19 public health emergency declarations. Those restrictions persisted, in various forms and levels, and by all accounts, from about March of 2020 to April of 2023, which overlapped with Myers's federal limitation period.

Against the backdrop of the pandemic, Myers had the extraordinary experience of being a wheelchair bound individual due to his ongoing battle with Parkinson's Disease since 2013, which affects, among other things, his physical ability to write. (ECF Nos. 49-1 at 3; 51-1 at 27, 45, 102, 104, 109, 114.) While imprisoned during the limitation period, he needed, but was not always provided medications, not only for his Parkinson's Disease, but for COPD, asthma, sleep

apnea, HBP, mitral valve prolapse, glaucoma, gout, and high cholesterol. (ECF Nos. 49-1 at 3; 51-1 at 32, 65, 73, 96, 109, 114.)

Myers experienced the extraordinary circumstance of being without his case file for about six to eight months—and at least three months of that was during his AEDPA limitation period (April to July 2021). *See, e.g., Espinoza-Matthews v. California*, 432 F.3d 1021, 1027–28 (9th Cir. 2005) (reiterating, "it is 'unrealistic to expect [a habeas petitioner] to prepare and file a meaningful petition on his own within the limitations period' without access to his legal file . . .." and holding equitable tolling warranted where petitioner was unable to access his legal file for 11 months and received it only a little over a month before his deadline) (quoting *Spitsyn v. Moore*, 345 F.3d 796, 801 (9th Cir. 2003)).

Myers's state direct appeal was decided on November 25, 2020. (ECF No. 37-34.) Myers's appellate counsel, however, retired without informing Myers about the status of his case. (ECF No. 49-1 at 2.) Consequently, Myers learned about the status of his direct appeal in January 2021, when he received a copy of the December 2020 remittitur from the state appellate court. (*Id.*)

Myers contacted the Public Defender's Office (PDO) and reached someone in January or February of 2021 who informed him that his case had "fallen through the cracks." (*Id.*) The PDO told Myers he could not have access to his case file, which was necessary for him to file a state postconviction petition, until he obtained and provided the PDO with a court order withdrawing the PDO as his counsel of record. (*Id.*) On February 25, 2021, Myers mailed a motion seeking withdrawal of the PDO and appointment of counsel for the state postconviction proceeding. (ECF No. 38-2 at 6.) At that point, Myers had, through counsel's abandonment, been without his case file for about three months.

The state court received Myers's motion for withdrawal of the PDO on March 2, 2021, but the motion was not filed until 30-days later on April 1, 2021. (*Id.* at 2, 6.) From there, it took until June 1, 2021 (almost 60 days), for the state

8

court to grant the motion withdrawing the PDO and deny the motion for appointment of counsel for the state postconviction proceeding. (ECF No. 38-5.) Thus, Myers lost an additional three months without his case file, including more than a month during his AEDPA-limitation period.

Myers submitted the order to the PDO and after calling five or six times about his request for his case file, received part of it in July or August of 2021. (ECF No. 49-1 at 2.) He received only the trial transcripts and a copy of his direct appeal. (*Id.*) He did not receive state-court motions or trial exhibits, which are essential for a white-collar crime case of theft by what amounts to embezzlement. (*Id.*) Thus, Myers lost another two or three months without his case file due to external forces beyond his control and that time included two to three months of his AEDPA-limitation period.

On August 24, 2021, after having received part of his case file and while preparing his state petition, Myers encountered obstacles preventing access to law library and copying facilities. He submitted an Inmate Request Form requesting access to the law library for habeas. (ECF No. 49-2 at 2.) He explained that it was due "soon"; however, six days later he received a response that, "due to covid protocols the law library is not scheduling research at this time." (*Id.*) Myers contends he also lacked access to copying services due to the COVID-19 lockdowns while preparing his state petition, between August and November of 2021, yet he acted diligently by instead mailing documents to family members to make copies and return the originals to him. (ECF No. 49-1 at 2–3.)

Once he prepared his state petition, Myers experienced another 29-day delay during his federal limitation period after he mailed his state postconviction petition for filing. Myers submits evidence that he mailed his *pro se* state postconviction petition by UPS Priority Mail on November 20, 2021, and he received confirmation that it was received by the state court on November 22, 2021; the state district court, however, did not file-stamp the petition as having

been received until almost a month later on December 21, 2021, and filed it the next day, December 22, 2021. (ECF Nos. 38-7 at 2, 9; 38-24 at 5; 49-3.)

Myers's inability to access law library materials and copying facilities continued to stand in his way after the conclusion of his state court proceedings and in the time leading up to his AEDPA-deadline. The remittitur for the state postconviction appeal from the denial of the state postconviction petition issued on December 5, 2022. (ECF No. 38-28.) On the day the state court remittitur issued, Myers mailed a motion seeking a 30-day extension of time to prepare, copy, and mail a petition for review "due to unforeseeable constraints, limitations, and restrictions according to Northern Nevada Correction Center Current Policies and Procedures and the lack of access to the law library . . .. (ECF Nos. 38-30 at 2; 38-31.) The motion was denied. (ECF No. 38-32.) On January 12, 2023, he moved for reconsideration of the denial of his motion for extension of time, explaining that he requested additional time to submit a petition for review due to "unforeseeable constraints at the Nevada Northern Correctional Center Current Policies and Procedures," and that his delays were based on "the lack of access to the institution law library," due to facility "labor issues," and facility changes to "protocol and procedures" that were compounded by weekday holiday closures. (ECF No. 38-34 at 2–3.) The motion for reconsideration was denied on January 20, 2023. (ECF No. 38-35 at 2.)

Additionally, in February of 2023, with less than two months left of his federal limitation period due to expire in April of 2023, Myers experienced a "medical mix-up" with another individual by the same last name, that left him without medication, including his Parkinson's medication (Carbidopa/Levodopa (carbo/levo)). (ECF No. 51-1 at 73.) Many of his medications, including carbo/levo, were unfilled during April and May of 2023. (*Id.* at 69.) Lack of medication for his Parkinson's Disease stood in his way as it affected Myers's inability to write for long periods requiring that he work in short intervals due to

pain, tremors, and limited mobility. (ECF No. 39-1 at 3.) Because these many extraordinary circumstances and obstacles over the course of his federal limitation period, affected his ability to timely prepare and file his federal petition, Myers filed a petition that was 70 days late.

Although Myers might have filed a "protective" application and sought stay and abeyance in federal court during the pendency of his state postconviction proceedings; it is likely his application would have been denied as his state court proceeding was pending and Myers had every reason to believe his state postconviction claims were timely, pending, and unexhausted, in the state courts. *See, e.g., Pace*, 544 U.S. at 416 (indicating a prisoner's "reasonable confusion about whether a state filing would be timely" will ordinarily constitute good cause for a protective federal petition). Moreover, it was impossible at that time for Myers to foresee that extraordinary circumstances outside his control would stand in the way of his filing a timely federal petition after the state postconviction proceedings concluded. He could not have predicted that, after the state postconviction proceedings concluded, he would continue to lack access to law library and copying services or that he would have to contend without medication due to a medical mix-up over his medications in February of 2023, and delayed receipt of medications during April and May of 2023. It is telling that shortly after COVID-19 ceased to be considered a public health emergency in April of 2023, and after receipt of his medications resumed, Myers was able to prepare and submit his federal petition, albeit 70 days late.

The Court concludes that, based on the totality of the extraordinary circumstances that Myers faced, and the entire hand that he was dealt, he acted with reasonable diligence throughout the limitation period. Moreover, Myers faced more than one extraordinary circumstance, that despite his reasonable diligence, stood in his way for far longer than 70 days and prevented timely filing of his federal petition. *See Holland*, 560 U.S. at 649. Accordingly, Myers is

entitled to equitable tolling for a sufficient period to cover the 70 days when his petition was untimely. The motion to dismiss the petition as untimely is denied.

**B.     Relation Back of Grounds 1 and 2(c)**

Respondents contend Grounds 1 and 2(c) must be dismissed as untimely because they do not relate back to the original petition. (ECF No. 42 at 6–7.) Myers contends the claims relate back to the original petition. (ECF No. 48 at 11–15.)

A new claim in an amended petition that is filed after the expiration of the AEDPA one-year limitation period will be timely only if the new claim relates back to a claim in a timely-filed pleading on the basis that the claim arises out of "the same conduct, transaction, or occurrence" as a claim in the timely pleading. *See* Fed. Rule Civ. Proc. 15(c)(1)(B); *Mayle v. Felix,* 545 U.S. 644, 650 (2005) ("An amended habeas petition, we hold, does not relate back (and thereby escape AEDPA's one-year limited) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleadings set forth.") In *Mayle,* the United States Supreme Court held "[a]s long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." *Id.* at 664. "Hence, relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Id.* at 659. A claim that merely adds "a new legal theory tied to the same operative facts as those initially alleged" will relate back and be timely. *See id.* at 650, 659 & n.5.

**1.     Ground 1**

Myers alleges the trial court violated his constitutional right to present a defense at trial by precluding cross-examination of Mrs. Lancaster about her husband's involvement with a former client. (ECF No. 29 at 11–14.) Respondents

contend this claim is untimely because it does not relate back to Myers's original petition. (ECF No. 42 at 6.)

The Ninth Circuit has found that a supporting brief attached to a petition may be considered part of the habeas petition under Fed. R. Civ. P. 10(c). *See Ross v. Williams*, 950 F.3d 1160, 1168–69 (9th Cir. 2020). In *Ross*, the Ninth Circuit determined a habeas petition may incorporate attached exhibits, even if a petitioner does not reference the attachment in the petition itself. *Id.* (citing *Dye v. Hofbauer*, 546 U.S. 1, 4 (2005)). Fed. R. Civ. P. 10(c) states, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Furthermore, the Advisory Committee Note to Rule 4 of the Rules Governing Section 2254 Cases recognizes a court's preliminary review of a petition prior to the respondents' response "may properly encompass any exhibits attached to the petition, including, but not limited to, transcripts, sentencing records, and copies of state court opinions."

Myers attached to his original petition a portion of the Nevada Court of Appeals' decision affirming the judgment on direct appeal, which this Court liberally construes to include the entirety of the opinion. (ECF No. 1-3 at 21–22.) The Nevada Court of Appeals's decision considered a claim that the trial court erred, including by violating Myers's Due Process and Confrontation Clause rights, when it excluded cross-examination of Mrs. Lancaster about her husband's inheritance from a third party (another client). (ECF Nos. 1-3 at 22; 37-34 at 5–6 n.5.) Ground 1 relates back to the original petition. The motion to dismiss Ground 1 as untimely is denied.

### 2. Ground 2(c)

In Ground 2 of his First-Amended Petition, Myers alleges trial counsel provided ineffective assistance by failing to (a) move to preclude Ms. Willard from testifying at the preliminary hearing, (b) object to the use of her prior testimony at trial, and (c) move for a mistrial, based on the State's disclosure that Ms.

Willard had dementia when she gave that testimony. (ECF No. 29 at 14–16.) Respondents contend Ground 2(c) must be dismissed because it does not relate back to Myers's initial petition and is unexhausted. (ECF No. 42 at 6–7.) Myers agrees his initial petition did not use the phrase "motion for mistrial," but contends he alleged operative facts for that theory. (ECF No. 48 at 14–15.)

The Court finds Ground 2(c) relates back to the initial petition. Myers alleged "trial counsel failed to present the competency of the alleged victim testimony at preliminary hearing or trial" and counsel failed to challenge "the use of testimony of the alleged victim at trial." (ECF No. 1-1 at 19.) The Court finds the original and amended petitions state claims that are tied to a common core of operative facts, i.e., counsel's failures to challenge Ms. Willard's testimony based on her dementia, and therefore relation back is in order. *See Mayle,* 545 U.S. at 664. The motion to dismiss Ground 2(c) as untimely is denied.

### C.    Exhaustion of Grounds 2(c), 3, and 4

Respondent moves to dismiss Grounds 2(c), 3, and 4, as unexhausted. (ECF No. 42 at 7–10.) Myers contends these grounds are exhausted, but if the Court finds they are not exhausted, then they are technically exhausted by procedural default and he can overcome the procedural default of the claims under *Martinez v. Ryan,* 566 U.S. 1 (2012). (ECF No. 48 at 15–23.)

A state prisoner first must exhaust state court remedies for a habeas claim before presenting the claim to the federal courts. 28 U.S.C. § 2254(b)(1)(A). This exhaustion requirement ensures the state courts, as a matter of comity, have the first opportunity to address and correct alleged violations of federal constitutional guarantees. *See Coleman v. Thompson,* 501 U.S. 722, 730–31 (1991). "A petitioner has exhausted his federal claims when he has fully and fairly presented them to the state courts." *Woods v. Sinclair,* 764 F.3d 1109, 1129 (9th Cir. 2014) (citing *O'Sullivan v. Boerckel,* 526 U.S. 838, 844–45 (1999)). To satisfy the exhaustion requirement, a claim must have been raised through

14

one complete round of either direct appeal or collateral proceedings to the highest state court level of review available. *O'Sullivan*, 526 U.S. at 844–45; *Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003) (*en banc*).

To properly exhaust a claim, the claim as asserted in state court "must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." *Woods*, 764 F.3d at 1129 (quoting *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996) and *Davis v. Silva*, 511 F.3d 1005, 1009 (9th Cir. 2008)). "A claim has not been fairly presented in state court if new factual allegations either 'fundamentally alter the legal claim already considered by the state courts,' . . . or 'place the case in a significantly different and stronger evidentiary posture than it was when the state courts considered it.' " *Atkins v. Bean*, 122 F.4th 760, 771 (9th Cir. 2024) (quoting *Dickens v. Ryan*, 740 F.3d 1302, 1318 (9th Cir. 2014) (internal citation omitted)).

### 1.    Ground 2(c)

Ground 2(c) alleges counsel was ineffective for failing to move for a mistrial, based on the State's disclosure that Ms. Willard had dementia when she gave testimony that was read to the jury. (ECF No. 29 at 14–16.) Respondents contend the claim was not fairly presented during the state postconviction proceedings. (ECF No. 42 at 9.) Myers contends the claim does not fundamentally alter the claim already presented to the state courts, or alternatively, he can overcome any procedural default of the claim under *Martinez*. (ECF No. 48 at 19–20.)

The Court finds Ground 2(c) is exhausted. The state appellate court considered whether "trial counsel was ineffective for failing to challenge the victim's preliminary hearing testimony on the ground that she was incompetent to testify because she was older and had difficulty remembering things." (ECF No. 38-27 at 4.) The factual allegations in Ground 2(c) neither fundamentally alter the legal claim already considered by the state courts, nor place the case in

a significantly different and stronger evidentiary posture than it was when the state courts considered it. *See Dickens*, 740 F.3d at 1318. The motion to dismiss Ground 2(c) as unexhausted is denied.

### 2. Ground 3

Ground 3 alleges trial counsel provided ineffective assistance by failing to (a) adequately challenge Mrs. Lancaster's expert testimony and (b) present a forensic accounting expert to rebut her conclusions at trial. (ECF No. 29 at 16–18.) Respondents move to dismiss Ground 3 as unexhausted arguing Myers fairly presented a claim that trial counsel should have conducted a forensic audit, but did not claim counsel should have presented an expert forensic accountant to rebut Lancaster's testimony. (ECF No. 42 at 10.) Myers argues this claim was exhausted on post-conviction appeal, or alternatively he can overcome the procedural default of this claim under *Martinez*. (ECF No. 48 at 22–23).

In Myers informal state appellate brief, he alleged that due to, among other things, the failure of his counsel, he was not afforded a fair trial because he was not afforded an unbiased forensic accounting. (ECF No. 38-24 at 6, 8.) He argued that an audit would have established Mrs. Lancaster's accounting omitted critical information, including that there was no availability of funds to steal. (*Id.*) Thus, Myers fairly presented a claim to the state courts that trial counsel was ineffective for failing to obtain an audit to challenge Lancaster's testimony. The motion to dismiss Ground 3 as unexhausted is denied.

### 3. Ground 4

In Ground 4, Myers alleges trial counsel provided ineffective assistance by failing to (a) obtain Ms. Willard's Charles Schwab financial account records; and (b) call Ms. Willard's financial advisor, Mike Pequeen, to testify at trial. (ECF No. 29 at 18–19). Respondents move to dismiss Ground 4 as unexhausted claiming Myers raises them for the first time in his federal petition. (ECF No. 42 at 10.) Myers counters that, in his informal brief to the Nevada Court of Appeals, he

16

argued trial counsel was ineffective for failing to call Pequeen to testify and obtain her Charles Schwab financial records to show that Ms. Willard personally authorized the transactions between her checking and investment accounts, was in control of the transactions, and that Myers did not steal from her. (ECF No. 48 at 22 (citing ECF Nos. 38-24 at 6–8.)

The Nevada Court of Appeals considered whether trial counsel was ineffective for failing to obtain documents from the victim's financial advisor, M. Pequeen, or to call him as a witness for trial. (ECF No. 38-27 at 3.) Thus, Ground 4 was exhausted. *See Ybarra v. McDaniel*, 656 F.3d 984, 991 (9th Cir. 2011) ("Regardless of whether or how a petitioner has presented a claim, however, that claim has been exhausted if the state courts have in fact ruled on its merits.") (citing*, inter alia, Sandgathe v. Maass,* 314 F.3d 371, 377 (9th Cir.2002) ("Where a court has in fact ruled on a claim, there is no possibility of friction between the state and federal court systems caused by the unseemliness of a federal district court's overturning a state court conviction without the state court's having had an opportunity to correct the constitutional violation in the first instance." (internal quotation marks, alterations, and citation omitted)). The motion to dismiss Ground 4 as unexhausted is denied.

## III.   CONCLUSION

It is therefore ordered that Respondents' Motion to Dismiss (ECF No. 42) is denied.

It is further ordered that Respondents file their answer to the remaining grounds in the First-Amended Petition within 60 days of the date of this Order. Petitioner will then have 45 days to file his reply.

DATED THIS 31st day of March 2026.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

18